UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

GARY BUTLER                              )
                                         )
v.                                       )          NO. 2:07-CV-88
                                         )
ILIFF MCMAHAN, JR.,                      )
*ET AL.*                                 )

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Defendant Iliff McMahan Jr.'s

Motion for Summary Judgment, [Doc. 27], and Defendant Cocke County, Tennessee's

Motion for Summary Judgment, [Doc. 30]. These defendants move for summary

judgment as to all claims brought against them, including several state law causes of

action. The plaintiff has filed responses, and the matter is ripe for disposition.

## I.  FACTUAL BACKGROUND

The plaintiff worked as a reporter for *The Newport Plain Talk*, a

newspaper owned by Jones Media, Inc. The plaintiff signed a "Professional

Employment Contract" with an effective date of July 9, 2006; the contract was not for

a specified term. The plaintiff alleges that Defendant McMahan, the mayor of Cocke

County, shortly after his election, demanded that press coverage in the *Newport Plain

Talk* meet his expectations. The plaintiff also alleges that McMahan previously

obtained the removal of another employee from the county beat of the newspaper, and

-1-

he further alleges that McMahan had him reassigned to the city beat of the newspaper. According to plaintiff, he received an email from McMahan, "threatening plaintiff continued employment." He further alleges that McMahan spoke with a representative of Jones Media in an effort to get him fired.

Then, in November 2006, the plaintiff, while designated as "law enforcement liaison," learned of alleged illegal bear hunting activities and contacted the Tennessee Wildlife Resources Agency ("TWRA") as part of his investigation. The plaintiff specifically suggested to TWRA agents that McMahan was involved in illegal hunting activities.[1] Editor David Popiel contacted the plaintiff shortly after the plaintiff disclosed this information to the agents and allegedly told the plaintiff that he would have to speak to McMahan "to see where this investigation will go." The plaintiff further contends that McMahan requested his termination, and shortly thereafter, the plaintiff was terminated on November 21, 2006.

Editor Jim Hekel noted in information sent to the Tennessee Department of Labor and Workforce Development after plaintiff's termination that McMahan had complained to the newspaper on several occasions that the plaintiff was biased and unfair in reporting stories about him. The newspaper's alleged reason for firing the plaintiff was insubordination for "pursu[ing] as story without [the newspaper's] prior

---

[1]McMahan was cited and pled guilty to hunting without a valid license.

approval concerning the county mayor."

II.  **STANDARD OF REVIEW**

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient

evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

## III.  **<u>DISCUSSION</u>**

Defendant McMahan moves for summary judgment on all counts against him in his personal capacity. Those counts include: (1) section 1983 action regarding

the deprivation of plaintiff's First Amendment right of freedom of the press; (2)

section 1983 action alleging a civil conspiracy to deprive the plaintiff of his

constitutional rights; (3) a state law claim of interference with plaintiff's employment

relationship; (4) a state law claim of common law inducement to breach a contract; (5)

a state law claim of inducement to breach a contract pursuant to Tennessee Code

Annotated section 47-50-109; and (6) a state law claim of civil conspiracy. Defendant

Cocke County moves for summary judgment on all counts against it, including: (1)

section 1983 action alleging the deprivation of plaintiff's First Amendment right of

freedom of the press; (2) section 1983 action alleging a civil conspiracy to deprive the

plaintiff of his constitutional rights; and (3) state law claims of negligence and gross

negligence. This Court will discuss the claims regarding Defendant McMahan in his

personal capacity first and then all claims regarding Defendant Cocke County.

### A. **McMahan in his Personal Capacity**

1. Section 1983 First Amendment

Defendant McMahan submits that he is entitled to qualified immunity

from the plaintiff's claims.

> In determining an officer's entitlement to qualified
> immunity [this Court] follow[s] a two-step inquiry. *Saucier
> v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 150 L. Ed.
> 2d 272 (2001). First taken in the light most favorable to
> the plaintiff, [the Court] decide[s] whether the facts alleged
> show the officer's conduct violated a constitutional right.

-5-

> *Id.* at 201. If no constitutional right would have been violated were the plaintiff's allegations established, there is no need for further inquiry into immunity. If a violation can be made out on a favorable view of the plaintiff's submissions, [the Court] next ask[s] whether the right was clearly established. *Id.*

*Vakilian v. Shaw*, 335 F. 3d 509, 516-17 (6th Cir. 2003). In general, government officials performing discretionary functions are shielded "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "[A]ll but the plainly incompetent or those who knowingly violate the law" are protected by qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The relevant question for the Court regarding whether the right was clearly established is not the subjective intent of the defendant, but whether a reasonable official would have believed the defendant's conduct to be lawful, in light of the clearly established law and information possessed by the defendant. *Anderson*, 43 U.S. at 640. The parties agree that some level of retaliation by a public official against a member of the press for exercising his First Amendment rights is unconstitutional. *See McBride v. Village of Michiana*, 100 F.3d 457 (6th Cir. 1996). They further agree that the "contours of this right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

This Court discerns that the plaintiff's theory is that because the plaintiff made TWRA officials aware of Defendant McMahan's alleged illegal hunting activities,[2] Defendant McMahan requested that plaintiff be terminated from plaintiff's employment at the newspaper, using his position as county mayor to threaten the newspaper with retaliation in the form of restraining access to information and limiting official advertisements. Defendant McMahan claims that he is entitled to qualified immunity, and regarding the first part of the *Saucier* inquiry, he argues that no constitutional violation occurred. McMahan does not claim that the plaintiff has not properly alleged a cause of action in terms of the elements set forth in *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998). These elements include: "(1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights." However, the qualified immunity inquiry entails a threshold determination of whether the plaintiff sufficiently alleged a violation of a constitutionally protected right. *Mattox v. City of Forest Park*, 183 F.3d 515, 520 (6th Cir. 1999).

---

[2]As stated earlier, McMahan was cited and pled guilty to hunting without a valid license.

With respect to the inquiry as to whether the plaintiff was engaged in a constitutionally protected activity, the plaintiff claims that plaintiff's comments to TWRA agents about Defendant McMahan were protected speech. In support of that assertion, the plaintiff relies upon Tennessee Code Annotated Section 50-1-304(b), which states, "No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b) (2009). The plaintiff, however, cites no case law which states or suggests that such speech is constitutionally protected. Defendant McMahan argues correctly that this state statute establishes an employee's cause of action against his employer; it does not create a basis for finding a violation of the United States Constitution. As such, the first element of a retaliation claim is not met. Thus, the plaintiff has failed to allege a constitutional violation, and that failure is fatal to his case. Accordingly, Defendant McMahan's motion for summary judgment, [Doc. 27], is **GRANTED** as to this count.

Assuming, *arguendo*, that this element and the other two elements of a retaliation claim are met so that the plaintiff sufficiently alleged a constitutional violation, this Court still could not move to the second part of the qualified immunity inquiry because it again could not find that a constitutional violation occurred. Defendant McMahan is correct that *McBride v. Village of Michiana*, 100 F.3d 457,

462 (6th Cir. 1996), establishes that the proper exercise of a defendant's own free speech rights cannot serve as a basis for imposition of liability. *Id*. Even assuming that the plaintiff presented evidence that Defendant McMahan requested his termination, this request is merely one in which Defendant McMahan exercised his free speech rights in complaining to the newspaper about one of its employees. According to *McBride*, a public official may exercise his own rights as long as he does not engage in unconstitutional retaliation. *Id*.

Here, the plaintiff has merely alleged in his complaint that "McMahan, under the color of law, as an elected official with the power to restrain access to information and to limit official advertisements, did threaten or implied a threat that if [newspaper editors] did not fire Plaintiff, that the newspaper would suffer retaliation." The plaintiff offers no other evidence of any retaliation against the newspaper except the allegation in his complaint. The bare allegation is not sufficient to establish a that a constitutional violation occurred. Further, it is not competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Anderson*, 477 U.S. at 256.

2. Section 1983 Civil Conspiracy Claims

In *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985), the Sixth Circuit set forth the standard for proving a section 1983 civil conspiracy claim.

A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Id.* "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). "Rarely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire, . . . circumstantial evidence may provide adequate proof of conspiracy." *Weberg v. Franks,* 229 F.3d 514, 528 (6th Cir. 2000).

Defendant McMahan argues that the plaintiff must first establish that a constitutional right was violated before a civil conspiracy can be found. *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003). The plaintiff does not dispute this; however, he merely argues that the conspiracy existed because "two or more persons agreed among themselves to retaliate against [his] exercise of speech." First, this Court has previously discussed why no constitutional violation occurred. Second, the plaintiff's complaint as to this conspiracy is conclusory and does not state material

-10-

facts sufficient to support the claim. Futhermore, to survive summary judgment, the plaintiff must offer competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of the issue. *Anderson*, 477 U.S. at 256. The plaintiff has not offered evidence, circumstantial or otherwise, to create a genuine issue of material fact as to a single plan or a general conspiratorial objective. As such, Defendant McMahan's motion for summary judgment on this count is **GRANTED**.

### 3. Common Law and Statutory Inducement to Breach a Contract

Defendant McMahan argues that "to recover for procurement of a breach of contract, the plaintiff must prove that, there was a legal contract for a designated term." *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994). Here, the Professional Employment Contract was not for a specified term. In plaintiff's response, he acknowledges this fact and states that he "does not oppose defendant McMahan's motion for summary judgment on this single count."[3] As such, the Defendant McMahan's motion as to his common law and statutory claims of inducement to breach a contract is **GRANTED**, and those claims are hereby **DISMISSED**.

### 4. Interference With Plaintiff's Employment Relationship

---

[3]Although the plaintiff states "on this single count," he actually referenced both the common law and the statutory claims in his response.

To prove interference with an employment relationship, the plaintiff must establish the following elements:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference.

*Trau-Med of American, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (internal citation and emphasis omitted). Defendant McMahan admits that the plaintiff can satisfy the first two elements; however, he argues that there is no genuine issue of material fact as to the third and fourth elements because "it is undisputed that McMahan did not request the termination of Butler."

The plaintiff argues that he has sufficiently alleged that Defendant McMahan intended to cause his termination. In support of this allegation, the plaintiff offered the affidavit of Charles Lewis Moore, which stated that Editor Popiel, another defendant in this case, told him that he terminated the plaintiff because of "Iliff." In further support, the plaintiff refers this Court to his deposition where he testified that upon Defendant Popiel's learning that he reported Defendant McMahan's alleged illegal hunting activities to TWRA agents, Defendant Popiel stated, "I'll have to speak

-12-

with Iliff to see where this investigation needs to go." Days later, the plaintiff was fired. Additionally, the plaintiff stated in his deposition that, approximately two years prior to his termination, he received an email from Defendant McMahan and that plaintiff interpreted the wording as an implicit threat to have him fired. The plaintiff does not remember the exact wording and does not have a copy of the email, but he testified in his deposition that although Defendant McMahan did not explicitly threaten to have him fired, Defendant McMahan wrote something to the effect that Defendant McMahan "would take this up with David," Defendant Popiel. During this general time frame, again approximately two years before plaintiff's termination, Defendant Popiel told the plaintiff that Defendant McMahan had "gone to Greeneville to ask that [the plaintiff] be terminated or requested [his] termination."

In reply, Defendant McMahan argues that plaintiff's evidence does not create a genuine issue of material fact because it is vague, based on his own interpretation, and a result of hearsay statements. "Hearsay evidence may not be considered on summary judgment." *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999). Thus, this Court must analyze the plaintiff's proposed evidence for admissibility.

First, the alleged email from Defendant McMahan could be considered an admission by a party-opponent pursuant to Federal Rule of Evidence 801(d)(2)(A).

-13-

Nonetheless, the plaintiff could not remember its wording and stated at his deposition that this alleged email, which he received approximately two years prior to his termination, only contained an implied threat. It merely stated that Defendant McMahan would speak to Defendant Popiel about some issue regarding the plaintiff. The testimony is unclear as to what Defendant McMahan would discuss with Defendant Popiel. The plaintiff *assumed* that this conversation, which was supposed to occur in the future, would include a request for plaintiff's termination. Again, this email was received two years prior to plaintiff's termination and the testimony concerning the email is speculative at best.

Second, although Defendant Popiel's statement, which also was made approximately two years prior to the plaintiff's termination, that Defendant McMahan had gone to Greeneville to request the plaintiff's termination was made by a party-opponent, Defendant Popiel, it is offered against a *different* party, Defendant McMahan. Furthermore, the only way that Defendant Popiel could have become aware of this is through what someone else told him. The plaintiff's deposition does not state who actually told Defendant Popiel this information. It could have been Defendant McMahan, Defendant Hekel, Defendant Jones, or a person not a defendant; the possibilities are many. Thus, the statement is double hearsay.

In this situation, this Court must analyze each statement for its

-14-

admissibility. Because the declarant of the statement which informed Defendant Popiel of Defendant McMahan's alleged visit to Greeneville is not known, this Court cannot make that determination. Assuming, *arguendo*, that Defendant McMahan told Defendant Popiel that he did this, then the statement of McMahan likely would be admissible pursuant to Federal Rule of Evidence 801(d)(2)(A). However, that does not end the inquiry because this Court must still analyze whether *Defendant Popiel's statement* to the plaintiff is admissible.

As stated earlier, this statement is made by a party-opponent about a different party-opponent and, thus, defendant Popel's statement would not be admissible under Rule 801(d)(2)(A). Arguably, the statement could be admissible under Federal Rule of Evidence 801(d)(2)(E). Under that subsection a statement is not hearsay if "[t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in the furtherance of the conspiracy." The Court notes that the plaintiff only brings this interference with an employment relationship claim against Defendant McMahan in his personal capacity. He does, however, allege section 1983 and state law civil conspiracy claims. Therefore, this Court will analyze the admissibility of the statement pursuant to this Rule 801(d)(2)(E).

The complaint alleges pursuant to section 1983 that the defendants acted

jointly to deprive him of his civil rights. Pursuant to his state conspiracy claims, the plaintiff alleges that the defendants conspired to deprive him of "his rights arising under the Federal and Tennessee Constitution [sic], and obtain the discharge of Plaintiff." It appears that the plaintiff claims that the defendants not only conspired to deprive him of his First Amendment rights but that they also conspired to bring about his termination. Further, in the plaintiff's response to Defendant McMahan's motion for summary judgment, he only argues that a conspiracy existed to bring about his termination. This Court notes that if Jones Media and the newspaper-employee defendants wanted to bring about the plaintiff's termination, no conspiracy would be necessary because these defendants would have the power to terminate his employment with or without cause, considering, and the plaintiff even admits, that he does not have an employment contract for a specified time; his employment is at-will.

Moreover, the complaint is vague as to the actual time frame of the alleged conspiracy; thus, this Court is unclear whether this statement would fall within the actual time frame alleged because it was made approximately two years prior to the plaintiff's termination. Because this Court cannot definitively find that the statement was made during the alleged time frame and, thus, during the course of the conspiracy, it need not continue the analysis. Nonetheless, this Court will discuss whether the statement was made in furtherance of a conspiracy because if the time

-16-

frame is from the time the plaintiff began his reemployment with the newspaper in 1999 until the date of his termination on November 21, 2006, then the statement would fall within the course of the alleged conspiracy.

"A 'statement is "in furtherance of" a conspiracy if it is intended to promote the objectives of the conspiracy.'" *United States v. Monus*, 128 F.3d 376, 392 (6th Cir. 1997). However, "[t]he statement need not actually advance the conspiracy to be admissible." *United States v. Clark*, 18 F.3d 1337, 1342 (6th Cir. 1994). This Court cannot find that this statement was made in furtherance of a conspiracy. As stated earlier and as will be discussed later in regard to the state conspiracy claim, the plaintiff has not offered sufficient evidence in the record of a conspiracy to survive summary judgment. Without sufficient evidence that a conspiracy even existed, the statement cannot be considered to have been made in furtherance of a conspiracy. Accordingly, this Court finds that the statement is hearsay and will not consider it in deciding the summary judgment motion.

Third, Mr. Moore's statement in his affidavit, which stated that Defendant Popiel told him that Defendant Popiel terminated the plaintiff because of "Iliff," is double hearsay. Mr. Moore is asserting an out of court statement, one in which he was not the declarant, for the truth of the matter asserted. Although the statement was made by a defendant, again it is offered against a different defendant.

-17-

Even assuming, *arguendo*, that Defendant Popiel's statement is not hearsay because it is one by a coconspirator during the course and in furtherance of the conspiracy, Mr. Moore cannot testify as to this statement. When uttered by him it is hearsay, for which there is no applicable exception. Therefore, this Court will not consider this portion of Mr. Moore's affidavit in determining whether to grant summary judgment.

Fourth, concerning Defendant Popiel's statement that "I'll have to speak with Iliff to see where this investigation needs to go," this again is a statement by a party-opponent offered against a different party. As such, it is not admissible. Again, based on the above analysis, even if the plaintiff tried to argue it was a statement made by a coconspirator in the course and in furtherance of a conspiracy, this Court would find that the statement is still hearsay. If the plaintiff argues that the statement is not offered for the truth of the matter asserted, then this Court fails to see the statement's relevance. As such, it likewise will not be considered in deciding the summary judgment motion.

In sum, the only admissible evidence that the plaintiff has offered that Defendant McMahan requested his termination is an alleged email, sent approximately two years before the plaintiff's termination. The plaintiff cannot produce a copy of the email, and he cannot remember its exact contents. What he does remember is a statement that Defendant McMahan will have to talk to Defendant Popiel at some time

-18-

in the future about the plaintiff. This is not sufficient to create a genuine issue of material fact to survive the motion for summary judgment. Accordingly, Defendant McMahan's motion for summary judgment on this count is **GRANTED**.

### 5. State Law Civil Conspiracy

Civil conspiracy according to Tennessee law is "a 'combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means.'" *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001) (quoting *Chenault v. Walker*, 36 S.W.3d 45, 52 (Tenn.2001)). "There is no liability under a theory of civil conspiracy unless there is underlying wrongful conduct." *Levy v. Franks*, 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004). "It is a general rule that a conspiracy cannot be made the subject of a civil action, unless something is done which, without the conspiracy, would give a right of action. The damage done is the gist of the action, not the conspiracy. . . . [T]he simple act of conspiracy does not furnish a substantive ground of action." *Tenn. Pub. Co. v. Fitzhugh*, 52 S.W.2d 157, 158 (1932). "Therefore, if the claim underlying the allegation of civil conspiracy fails, the conspiracy claim must also fail." *Levy*, 159 S.W.3d at 82 (citing *Greene v. Brown & Williamson Tobacco Corp.*, 72 F.Supp.2d 882, 887 (W.D. Tenn. 1999); *see also Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994); *Felts v. Paradise*, 158 S.W.2d 727, 729 (1942). Again, in the plaintiff's

-19-

response to Defendant McMahan's motion for summary judgment, he only addresses this conspiracy in terms of bringing about his termination. This Court decided above that the plaintiff's claim that Defendant McMahan intentionally interfered with his employment relationship could not survive summary judgment. In addition, the plaintiff's employment was at-will, and Jones Media and its employees had the authority to terminate the plaintiff's employment even without cause. Defendant McMahan's motion for summary judgment as to this count is **GRANTED**.

### 6. Qualified Immunity for State Law Claims

Defendant McMahan also claims that he is entitled to qualified immunity on the state law claims. He argues that Tennessee law provides qualified or good faith immunity of government employees for state law torts. *See Willis v. Neal*,247 Fed.Appx. 738, 745 (6th Cir. 2007) (citing *Rogers v. Gooding,* 84 Fed.Appx. 473, 477 (6th Cir. 2003) which concluded, based upon *Youngblood v. Clepper*, 856 S.W.2d 405, 407-08 (Tenn. Ct. App. 1993), that a plaintiff's claim for assault and battery was precluded by qualified immunity). This Court, however, need not decide that issue because it has found that Defendant McMahan is entitled to summary judgment on all of the state law claims brought against him.

### B. Cocke County and McMahan in his Official Capacity

#### 1. Section 1983 First Amendment and Conspiracy Actions

Defendant Cocke County argues that in order for it to be liable, the plaintiff must first establish a constitutional violation. For the reasons set forth above, this Court again finds that no such violation of the plaintiff's constitutional rights has occurred. Defendant Cocke County also argues that, assuming a violation did occur, the plaintiff cannot establish a policy of inaction on behalf of the county. The plaintiff alleged in his complaint that "[t]he pattern of accommodation of Cocke County Mayor McMahan is evidence of a custom in Cocke County, Tennessee, where the personal desire of the top local elected official becomes the equivalent of law and persons are denied employment as a result of the custom." The plaintiff also alleged that the county "did not enact or enforce any policy or procedure to modify or limit any elected official['s], or employee['s], effort to obtain special treatment from the local press." It further alleges that the county "did not implement any policy or procedure to modify or limit the custom or policy of inaction known to exist in Cocke County, Tennessee." The plaintiff essentially argues that the county, which was "entwined" with *The Newport Plain Talk*, tolerated the civil rights violations by its "inaction."

Again, to establish liability under section 1983, a plaintiff must demonstrate that (1) he was deprived of a right secured by the Constitution or laws of the United States, and (2) he was subjected or caused to be subjected to this deprivation by a person acting under color of state law. *Searcy v. City of Dayton*, 38

-21-

F.3d 282, 286 (6th Cir. 1994) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1979)).

Suits against defendants in their official capacities as county employees are essentially

suits against the county. *See Fox v. Van Oosterum*, 176 F.3d 342, 347-48 (6th Cir.

1999) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Monell v. Dep't of Social

Services*, 436 U.S. 658, 690 n. 55 (1978)); *see also Scott*, 205 F.3d at 879 n. 21.  It is

firmly established that a municipality, or, in this case, a county, cannot be held liable

under section 1983 for an injury inflicted solely by its employees or agents. *Monell*,

436 U.S. at 694.  To prevail, the plaintiff must show that the alleged federal rights

violation occurred because of a municipal policy or custom. *Id*.

In so doing, the plaintiff "must also demonstrate that, through its

deliberate conduct, the municipality was the 'moving force' behind the alleged injury.

That is, a plaintiff must show that the municipal action was taken with the requisite

degree of culpability and must demonstrate a direct causal link between the municipal

action and the deprivation of federal rights." *Cherrington v. Skeeter*, 344 F.3d 631,

645 (6th Cir. 2003).

A plaintiff may look to four different avenues to prove the existence of

a municipality's illegal policy or custom: (1) the municipality's legislative enactments

or official agency policies; (2) actions taken by officials with final decision-making

authority; (3) a policy of inadequate training or supervision; or (4) a custom of

tolerance or acquiescence of federal rights violations.  *Monell*, 436 U.S. at 694.

Regarding the fourth avenue, the plaintiff argues that the county established an unwritten custom of tolerating civil rights violations through its "inaction."  Under an inaction theory, a plaintiff must show:

> (1) the existence of a clear and persistent pattern of [illegal activity];
>
> (2) notice or constructive notice on the part of the [defendants];
>
> (3) the [defendants'] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
>
> (4) that the [defendants'] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Doe v. Claiborne County*, 103 F.3d 495, 508) (6th Cir. 1996)).

There is no genuine issue of material fact regarding plaintiff's claim that the county had an unwritten custom of tolerance for civil rights violations through inaction.  Under this inaction theory, the plaintiff cannot show the existence of a clear and persistent pattern of illegal activity.  The plaintiff did present evidence of instances where the newspaper acquiesced to Defendant McMahan's requests, but these instances do not amount to the existence of a "clear and persistent pattern of

illegal activity." Because the first element is not met, this Court need not discuss the issue further.

For the reasons stated above, this Court FINDS that summary judgment is proper in regards to Cocke County and Defendant McMahan in his official capacity; accordingly, their motion in that regard is **GRANTED**.

2. <u>Negligence and Gross Negligence</u>

Defendant Cocke County argues that it can only be liable under the Tennessee Governmental Tort Liability Act ("GTLA") to the extent that a Cocke County employee was negligent and sovereign immunity has been removed with respect to the alleged negligent act. The county further contends that the complaint fails to allege any specific negligent conduct by a county employee, fails to allege facts to establish a duty, and fails to allege any specific fact to support a breach of such a duty. It also argues that immunity from suit has not been waived for this particular action. Finally, it argues in the alternative that discretionary function immunity applies pursuant to Tennessee Code Annotated section 29-20-205(1).

The plaintiff alleges in the complaint that Cocke County "negligently failed to exercise any supervisory control over McMahan and failed to institute any procedure to limit or prevent McMahan's demands for special treatment from the local press," that it "negligently failed to implement any policy or procedure to modify or

-24-

limit the custom and policy of inaction known to exist in Cocke County, Tennessee, if such policy exists," and that it "negligently allowed McMahan to use his position to create a fear of retaliation or create an expectation of obedience designed to foster 'positive press' which ultimately has potential to effect [sic] election outcomes - all in an effort to maintain McMahan's personal goals for elected office." To support these allegations in his response to Defendant Cocke County's motion for summary judgment, plaintiff cites a First Amendment case and two section 1983 cases. He does not address the issue in terms of Tennessee negligence law. In essence, this Court discerns, based upon his response, that his arguments more closely resemble a section 1983 claim that the county failed to properly supervise Defendant McMahan. Nonetheless, this Court will analyze the issue in terms of state law negligence.

Under Tennessee law, in order to recover under a theory of common law negligence, a plaintiff must establish the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, cause. *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991). Even if Defendants Cocke County and McMahan in his official capacity were not immune from suit under the GTLA, the plaintiff has failed to sufficiently show there is a genuine issue of material fact as to any duty owed to the plaintiff, much less

-25-

a breach of that duty. Also, the county cannot be found negligent for failure to supervise, when the plaintiff has failed to establish a genuine issue of material fact that Defendant McMahan's conduct was inappropriate.

Furthermore, under the GTLA, when the injury caused by the governmental employee's negligence arises out of one of the listed torts, the governmental entity is immune from suit. *See* Tenn. Code Ann. 29-20-205(2). The defendants claim that this suit is essentially a civil rights or interference with contract rights case, both of which are listed among the torts from which the government is immune. However, the plaintiff claims that the case is one of conspiracy and intentional interference with an employment relationship. While it is true that the plaintiff has brought all of those claims, the issue is whether the defendants are immune from the specific acts of negligence alleged in his complaint in relation to this count. As set forth above, relating to this count, this Court FINDS that plaintiff essentially alleged negligence in failing to supervise an employee who allegedly violated the plaintiff's civil rights. Because this is one of the torts included in Tennessee Code Annotated 29-20-205(2), then Defendants Cocke County and McMahan in his official capacity are immune from suit.

Because of the two conclusions above, this Court will not discuss the defendants' alternative theory, the discretionary function immunity. Accordingly, the

defendants' motion for summary judgment on this count is hereby **GRANTED**.

## IV.  CONCLUSION

In sum, for the reasons set forth above, it is hereby **ORDERED** that Defendant McMahan's motion for summary judgment, [Doc. 27], is **GRANTED** and all claims asserted against him in his personal capacity are **DISMISSED WITH PREJUDICE**.  It is further **ORDERED** that the motion for summary judgment, [Doc. 30], filed  by Defendant Cocke County and Defendant McMahan in his official capacity is **GRANTED**, and all claims against both of those defendants are **DISMISSED WITH PREJUDICE**.

Pursuant to LR16.4 of the Local Rules of  the United States District Court for the Eastern District of Tennessee, it is hereby **ORDERED** that this case proceed to mediation on the remaining claims within the next sixty (60) days.  It is also hereby **ORDERED** that all existing deadlines, the final pretrial, and the trial of this cause are  **CANCELLED**. The parties shall report on the results of mediation on or before September 1, 2009.  If mediation has been unsuccessful, this case will be reassigned for trial at that time.

ENTER:


s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE